(No. 33117.—

THE PEOPLE *ex rel.* Maurice Goldstein *et al.,* Appellants,
*vs.* JOHN BABB, Sheriff, Appellee.

*Opinion filed September 23, 1954—Rehearing denied Jan. 18, 1955.*

KOVEN, KOVEN & SALZMAN, of Chicago, (HOWARD R.
KOVEN, and PAUL HOMER, of counsel,) for appellants.

LATHAM CASTLE, Attorney General, of Springfield, and
JOHN GUTKNECHT, State's Attorney, of Chicago, (JOHN T.
GALLAGHER, RUDOLPH L. JANEGA, ARTHUR F. MANNING,
and KENNETH E. WILSON, of counsel,) for appellee.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

Appellants seek reversal of a judgment of the criminal court of Cook County, in an extradition proceeding, quashing a writ of *habeas corpus* and remanding them to the custody of the respondent, the sheriff of Cook County, to be delivered to the agent of the State of Ohio.

The appellants filed their petition for a writ of *habeas corpus* on February 9, 1953, alleging in substance that they were restrained of their liberty by respondent by virtue of an extradition warrant issued by the Governor of the State of Illinois; that the requisition papers issued by the Governor of Ohio were not in regular legal form; that they were not the particular persons named in the extradition papers; that they were not substantially charged with a crime against the laws of the demanding State; and that they were not fugitives from justice. Respondent filed his return to said petition stating that relators were in his custody by and under authority of a Governor's warrant and rendition issued by the Governor of Illinois upon the requisition of the Governor of Ohio; that all the papers were legal; that relators were fugitives from justice; that they were charged with an offense against the laws of Ohio; and that they were the persons named in the extradition papers and in the Governor's warrant.

Upon trial before the court on August 6, 1953, respondent introduced in evidence the Governor's extradition warrant, which stated that the Governor of Ohio demanded the arrest and delivery of Maurice Goldstein, alias Maurice Gold, and Jack S. Guthman as fugitives from justice, and has produced a copy of an indictment certified as authentic by said Governor charging said relators with having committed on the seventh day of April, 1950, in Cuyahoga County, Ohio, the crime of "Larceny by Trick," certified to be a crime under the laws of the State of Ohio, and ordering the arrest of relators, their production in court,

and their delivery to the agent of Ohio. The complaining witness, John DeRocca, a resident of Cleveland, Ohio, in direct examination, identified the relators, and testified that he had business relationships with them, and that they were at his home in Cleveland on April 7, 1950. DeRocca's wife also testified that relators were at their home in Cleveland on that day. Each of the relators testified in his own behalf, and each denied having been in Cleveland on the day in question.

Upon oral argument before this court the relators conceded that the indictment does substantially charge a crime in Ohio, and that they have failed to overcome the *prima facie* case made by the Governor's warrant and the testimony of respondent's witnesses that they were in Ohio on the date when the offense was alleged to have been committed. Relators' principal contention now, as we understand their argument, is that the court erred in denying them an opportunity to prove that the charge against them was based on their constructive, rather than actual presence in Ohio. They also object to the exclusion of evidence of the bad faith of the complaining witness in procuring the indictment, such evidence, they contend, being relevant to the witness's credibility.

Upon cross-examination of the witness DeRocca, relators' counsel attempted to show what had occurred between DeRocca and the relators at Cleveland on April 7, 1950. The court sustained objections to these questions, and stated: "Whether this warrant is good or bad I don't know, but I am only concerned with whether or not they were in the State of Ohio and the City of Cleveland at the time this was charged." Relators' position is that mere presence in the demanding State on the date of the offense charged is insufficient to support extradition, and that this presence must be marked by acts associated with the offense. They contend, therefore, that the trial court's ruling was erroneous in that it foreclosed inquiry into the events of

April 7, 1950, and thus prevented relators from showing that their presence in Ohio at that time was not connected with the offense.

Ordinarily the scope of inquiry in a *habeas corpus* proceeding to test the validity of an extradition warrant is limited to three questions: Is the accused substantially charged with a crime under the laws of the demanding State? Is the person in custody the person charged? Is he a fugitive from justice? *Roberts* v. *Reilly,* 116 U.S. 80; *People ex rel. Gilbert* v. *Babb,* 415 Ill. 349.

The latter question, the only one with which we are here concerned, is usually determined by the Governor, on proof satisfactory to him that the accused was present in the demanding State on the date when the offense is alleged to have occurred. That administrative determination creates a *prima facie* case sufficient to justify removal, and can only be overcome by proof to the contrary. (*Ex parte Reggel,* 114 U.S. 642.) To show that he is not a fugitive from justice the accused must demonstrate conclusively that he was not present in the demanding State, and a mere contradiction in the evidence on this issue will not entitle him to a discharge. *People ex rel. Mortensen* v. *O'Brien,* 371 Ill. 351; *People ex rel. Sedlack* v. *Toman,* 362 Ill. 516.

The kind of presence required to constitute one a fugitive from justice, however, is a physical presence. Constructive presence is not sufficient. (Ill. Rev. Stat. 1953, chap. 60, par. 2; *Hyatt* v. *Corkran,* 188 U.S. 691.) Relators now seek to impose the further limitation that even physical presence is not enough if the accused was not at the time engaged in any acts forming a part of the offense. They cite for this proposition the cases of *Hyatt* v. *Corkran,* 188 U.S. 691; *Strassheim* v. *Daily,* 221 U.S. 280, and *People* v. *Enright,* 217 N.Y.S. 288. Only the last mentioned of these cases supports relators' position.

In the *Hyatt case* it was conceded that the relator had not been physically present in the demanding State when

the offense was alleged to have been committed, and all that the case decided was that constructive presence would not suffice. The relators place reliance on the following language in the opinion: "We are of the opinion that the warrant of the Governor is but *prima facie* sufficient to hold the accused, and that it is open to him to show by admissions, such as are herein produced, or by other conclusive evidence, that the charge upon which extradition is demanded assumes the absence of the accused person from the State at the time the crime was, if ever, committed." (188 U.S. 691, 711.) This passage does not state the proposition which relators have advanced, and if it did it would nevertheless be dictum. *Strassheim* v. *Daily* decided that one who was admittedly not physically present in the demanding State when the offense was completed might nevertheless be extradited if he had previously committed therein an overt act forming a material step toward accomplishing the crime. The case does not hold, nor in our opinion does it intimate, that anything beyond physical presence at the time of the offense is required for extradition. In *People* v. *Enright,* however, where it appeared that all the acts constituting the offense had been performed outside the demanding State, the court held that the relator's physical presence there did not justify extradition, since his presence was for purposes unrelated to the perpetration of the crime.

We are not disposed to follow the *Enright* decision. To allow the relators the defense that their presence in Ohio was unrelated to the crime would permit them to avoid extradition on the ground that they were absent from Ohio on the date when the crime was in fact committed. What our statute requires, however, is that they prove their absence from Ohio on the date when the offense is "alleged to have been committed." The answers which relators sought to elicit from the complaining witness could have had no bearing on that question. The theory advanced

by the relators would necessarily require the court to enter upon an inquiry into the factual content and the legal implications of their activities while in the demanding State, and thus in effect to determine whether an offense had then and there been committed. It has long been established that such an inquiry is not within the scope of a *habeas corpus* proceeding. *Strassheim* v. *Daily*, 221 U.S. 280, 283; *People ex rel. Mortensen* v. *O'Brien*, 371 Ill. 351.

Relators' remaining contention that it was improper to exclude evidence of the complaining witness's bad faith in procuring the indictment is also without merit. It is well established in this State that courts will not inquire into the motive of the complaining witness in an extradition proceeding. His credibility, as well as his good faith, are questions for the courts of the demanding State. *People ex rel. Carr* v. *Murray*, 357 Ill. 326; *People ex rel. Cassleman* v. *O'Brien*, 380 Ill. 290.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*