(No. 40717.—

THE PEOPLE *ex rel.* Gordon Douglas, Appellant, *vs.* JOSEPH I. WOODS, Sheriff, Appellee.

*Opinion filed March 28, 1968.*

382

WARD, J., took no part.

GERALD W. GETTY, Public Defender, of Chicago, (PAUL BRADLEY and JAMES J. DOHERTY, Assistant Public Defenders, of counsel,) for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, and JOHN J. STAMOS, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and ELMER C. KISSANE, Assistant State's Attorney, of counsel,) for the People.

Mr. CHIEF JUSTICE SOLFISBURG delivered the opinion of the court:

The relator, Gordon Douglas, seeks reversal of an order of the circuit court of Cook County, which, in an extradition proceeding, quashed a writ of *habeas corpus* and remanded him to the custody of the Cook County sheriff for delivery to an agent of the State of Alabama.

On November 23, 1966, a warrant was issued by the Governor of the State of Illinois reciting that the relator was charged, by affidavit and complaint, with the crime of forgery in Montgomery County, Alabama, and that he was a fugitive from justice from that State. The warrant further alleged that the crime had been committed in the city of Montgomery on July 16, 1966.

The relator filed his petition for a writ of *habeas corpus* on December 30, 1966, alleging that he was not present in the State of Alabama on the date of the crime alleged in the Governor's warrant. A hearing on this petition was held

on January 25, 1967, at which time the State's Attorney introduced the Governor's warrant into evidence without objection. The State then rested its *prima facie* case, whereupon the relator took the stand and testified that he was living with his brother's family in Ohio on July 16, 1966, and that he could obtain witnesess to verify this fact. By agreement between counsel for the State and counsel for relator, the State was then allowed to present evidence in rebuttal with the understanding that the hearing afterwards be continued in order to allow the relator to produce his alibi witnesses. The State then called a witness who testified that the relator had passed a bad check in his place of business on July 16, 1966. The second witness called by the State was a Montgomery police officer who identified the relator as the individual who had fled from him during the course of a forgery investigation on July 16, 1966.

The hearing on the relator's petition was subsequently continued several times and on March 2, 1967, the assistant public defender, who was representing the relator, informed the court that the relator's alibi witnesses would not appear unless their expenses to and from Ohio were paid. Counsel further stated that the budget for the public defender's office makes no allowance for the payment of such expenses and that a motion for a court hearing for fees with which to reimburse the witnesses had been denied. The court then quashed the writ of *habeas corpus* and remanded the relator to the custody of the Cook County sheriff for delivery to an agent of the State of Alabama.

The sole issue before this court is whether or not an indigent, in an extradition proceeding, is constitutionally entitled to funds to pay the cost of transporting witnesses who will allegedly testify on his behalf in contradiction of the State's witnesses at such proceeding.

In support of his contention that he is entitled to such funds, the relator relies on our decision in *People* v. *Watson,*

36 Ill.2d 228, where we reversed a conviction because the trial court had denied the defendant's motion for funds with which to obtain the services of an expert witness essential to his defense against the crime of forgery. It is our opinion that the holding in *Watson* is not applicable to the facts in the case now before us and that the order of the trial court quashing the writ did not deprive the relator of any constitutional right.

In *Watson* it was apparent that upon a new trial the determination of the defendant's guilt or innocence would center on a comparison of signatures on two checks, and a majority of the court was of the opinion that the indigent defendant ought to have the right to the services of a handwriting expert to testify on this crucial issue.

Unlike *Watson,* however, this proceeding was not a criminal prosecution, and the relator does not seek the aid of an expert witness on a crucial issue in the case. A *habeas corpus* proceeding is not for the purpose of determining the guilt or innocence of the accused. (*People ex rel. Sedlack* v. *Toman,* 362 Ill. 516.) The ordinary scope of inquiry in this type of *habeas corpus* proceeding is to test the validity of an extradition warrant. This test is limited to three specific questions: (1) Is the accused substantially charged with the crime under the laws of the demanding State? (2) Is the person in custody the person charged? (3) Is he a fugitive from justice? *People ex rel. Goldstein* v. *Babb,* 4 Ill.2d 483.

The relator does not contest the. fact that he is substantially charged with the crime under the laws of Alabama; nor does he deny that he is the person charged in the extradition warrant. He does deny, however, that he is a fugitive from justice. To prove this he contends that he can produce witnesses who will testify that he was not present in the State of Alabama on the date the alleged crime was committed. Even if the defendant were able to produce these witnesses, their testimony would have only the effect

of introducing a conflict in the evidence. As we have noted, the State introduced the Governor's warrant into evidence without objection. This warrant evidences a determination by the Governor on proof satisfactory to him that the accused was present in the demanding State on the date the offense is alleged to have occurred. That administrative determination "creates a *prima facie* case sufficient to justify removal and can only be overcome by proof to the contrary." (*Ex parte Reggel,* 114 U.S. 642, 29 L. Ed. 250.) This contrary proof, however, must demonstrate conclusively that the accused was not present in the demanding State, as a mere contradiction in the evidence on this issue will not entitle him to a discharge. (*People ex rel. Goldstein* v. *Babb,* 4 Ill.2d 483.) Here the State introduced not only the Governor's warrant, but also two witnesses who positively identified the relator as being present in the State of Alabama on the date on which the crime was alleged to have been committed. Consequently, the only effect which the production of relator's witnesses could possibly have would be to contradict that evidence produced by the State. "We have heretofore repeatedly held that the trial court cannot discharge one arrested under a Governor's warrant where the evidence relating to the subject of the presence in or absence from the State is merely contradictory, inasmuch as *habeas corpus* is not the proper proceeding in which to try the question of alibi * * *." *People ex rel. Sedlack* v. *Toman,* 362 Ill. 516, 517; see also *People ex rel. Mortensen* v. *O'Brien,* 371 Ill. 351.

It is thus apparent that the production and testimony of the witnesses requested by defendant would not change the outcome of the proceeding; and we conclude that the relator was denied no rights as a result of the court's failure to provide him with funds with which to produce these witnesses.

It is therefore unnecessary to determine the extent of

an indigent defendant's rights to obtain funds for the production of testimony vital to his defense in a criminal prosecution.

The trial court was correct in quashing the writ of *habeas corpus* and its judgment is affirmed.

*Judgment affirmed.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.