STATE OF FLORIDA EX REL, JOSEPH F. PECK, *Plaintiff in Error*, v. HENRY R. CHASE, SHERIFF OF DADE COUNTY, FLORIDA, *Defendant in Error*.

Division A.

Opinion Filed March 2, 1926.

*Bart A. Riley,* for Plaintiff in Error:

*J. B. Johnson,* Attorney General, and *Marvin C. McIntosh,* Assistant, for Defendant in Error.

BROWN, C. J.—The relator was apprehended in Dade County, Florida, by the sheriff, and filed a petition for a writ of *habeas corpus.* The sheriff's return to the writ dis-

closed that the relator was held by virtue of an executive warrant of extradition issued by the Governor of this State. The relator contested the legal sufficiency of the executive warrant *inter alia* upon the ground that the same did not show that the copy of affidavit therein referred to, charging the relator with having committed a crime against the laws of the State of Missouri, was "made before a magistrate" of the demanding state. The final order of the court below denied the motion of the relator to dismiss him from custody upon this and other grounds, and denied the petition of the relator and remanded him to the custody of the respondent sheriff. From such order the relator sued out writ of error. The only ground of objection raised in the court below to the sufficiency of the executive warrant which is insisted upon in this court, is the omission from said warrant of the words above pointed out.

The major portion of the executive warrant reads as follows: "The State of Florida. To all and Singular the Sheriffs of the several Counties of this State to whom this may come, Greetings: Whereas, The Executive authority of the State of Missouri has demanded of the Executive authority of the State of Florida the delivery and surrender of the body of J. F. Peck........as a fugitive from Justice from said State of Missouri........to said State of Florida, and has produced and filed with the Executive Authority of said State of Florida to which said State J. F. Peck has fled from the State of Missouri....a copy of Affidavit charging the said person so demanded with having committed in said State of....Missouri....against the laws of said State of Missouri....the crime and felony of obtaining money under false pretenses and which is certified as Authentic by the Executive of said State of Missouri: Now, Therefore, This is to command you to apprehend and

arrest the body of the said J. F. Peck and deliver his said body to Robert Agee.... agent of the said State of Missouri, duly authorzed and Empowered to receive and convey the said J. F. Peck to the State of Missouri, then and there to be surrendered to the legal authorities of said State, to be dealt with according to law."

As was said by this court, speaking through Mr. JUSTICE STRUM in the case of State *ex rel,* Stringer, v. Quigg, et al, decided at the present term, "Proceedings in extradition are *sui generis,* finding their origin and existence, as between different nations, wholly in treaty obligations, and as between the states of this Union wholly by virtue of the provisions of the constitution of the United States and effectuating statutes." The provisions of our Federal constitution on this subject, Article IV, Sec. 2, is in general terms, but the Act of Congress, Sec. 5278, U. S. Rev. Gen. Stat. (See 10126 U. S. Compiled Statutes) is more specific. The applicable portions of this statute read as follows: "Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate, of the State or Territory from whence the person so charged has fled, it shall be the duty of the executive authority of the State or Territory to which such person has fled to cause him to be arrested and secured, and to cause notice of the arrest to be given to the executive authority making such demand, or to the agent of such authority appointed to

receive the fugitive, and to cause the fugitive to be delivered to such agent when he shall appear.''

It will be observed that the foundation of the executive warrant issued by the governor of the asylum State for the apprehension of the fugitive from the justice of the demanding state, is a proper demand from the executive authority of such demanding state accompanied by ''a copy of an indictment found or an affidavit made before a magistrate'' of the demanding State or Territory, ''charging the person demanded with having committed treason, felony or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled.''

⋅ Neither the constitution, nor the Act of Congress, nor our Florida statute, Section 6182 of the Rev. Gen. Stat., on this subject, expressly provided what the governor's extradition warrant shall show. There is no statutory attempt to prescribe the form or contents of such warrant. The basis for such warrant....the requirements as to what the chief executive of the asylum State have before him before he issues such warrant....is plainly prescribed. But as to the essential contents of the warrant itself, these can only be determined by the application of those general principles of law which are applicable to such questions.

The sufficency of the executive warrant in this case is conceded except in the particular above noted....the omission after the word ''affidavit'' of the words ''made before a magistrate'' of the demanding state.

In the early case of *Ex parte* Buford, 3 Cranch 448, Chief Justice Marshall, in speaking of a commitment warrant, said: ''The question is, what authority has the jailor to detain him? To ascertain this, we must look to the warrant of commitment only. It is that only which can justify

his detention. That warrant states no offense.'' In Moore on Extradition, Vol. II, section 621 and 622, it is said: ''An opinion was intimated by the supreme court of Texas in *Ex parte* Thornton, in 1853, that it might be necessary for the warrant of rendition to fully set forth the indictment or affidavit which accompanied the requisition. The case, however, went off on another point. In 1888 the court of appeals of Texas, having the question before it, disapproved of the *dictum* in *Ex parte* Thornton, and held that the warrant need neither set out in full nor be accompanied with the indictment or affidavit, and that it was sufficient if it disclosed that the essential conditions of the law had been complied with. Such is now the general rule. * * * * The warrant of rendition must show that the requirements of the law have been fulfilled. These in general are: (1) That the person charged had been demanded as a fugitive from justice by the executive of the State from which he fled; (2) That the requisition was accompanied with a copy of an indictment. or an affidavit made before a magistrate; (3) That the copy of the indictment or the affidavit was duly certified as authentic.'' See also Scott on Interstate Rendition, Section 95 to 101.

It must be conceded that this question of interstate extradition must be controlled by the provisions of the Federal statute and the effectuating Act of Congress above referred to. Without these, there would be no such thing as ''interstate extradition,'' and no harmony in the law governing the subject. State *ex rel,* Stringer v. Quigg, *supra*; Kuney v. State, —— Fla. ——, 102 So. 547. One of the early Federal cases construing this law is the case of *In Re* Doo Woon, 18 Fed. Rep. 898. In that case, it was held that the executive warrant must recite or set forth the evidence necessary to authorize the State executive to

issue it, and unless it does so, it is illegal and void. There was a tendency in the early cases to require either that the executive warrant set forth the documents coming from the demanding state upon which it was based, or recite their tenor and effect and attach copies of the same to the warrant. This unnecessary particularity has given way to the more sensible rule that if the governor's warrant briefly recites the essential jurisdictional facts in substantially the language of the statute, inasmuch as the law indulges the presumption that the chief executive of a State performs his duty, this will be deemed sufficient, although the copies of the documents referred to are not attached to the warrant or their substance set forth or recited therein. However, the warrant must show a compliance with the essential requirements of the congressional act, as above stated in the quotation from Moore on Extradition. When this is done, the executive warrant is *prima facie* evidence of the facts therein recited and the officer who apprehends the fugitive by virtue of the same need go no further to justify his detention when inquired into under a writ of *habeas corpus,* than to exhibit to the court in his return such executive warrant. The executive may attach a copy or copies of any of the documents upon which he bases his action to the warrant if he so desires, but if the warrant is so drawn as to comply with the requirements of the statute, as above set forth, he need not do so. In this case no copies of documents are atached. That one of such essential requirements of the Act of Congress, as the basis for the issuance of the executive warrant, is that the demand or requisitioin from the executive authority of the demanding State was accompanied, either by a copy of an indictment found or by an affidavit made before a magistrate, and that such copy of the indictment or affidavit was duly certified as au-

thentic by such executive authority of the demanding state, and that compliance with this requirement must appear in, and is absolutely essential to the validity of, the executive warrant, is the inevitable result of the language of the Federal statute itself and also the necessary conclusion from the principles laid down in the decisions of both the State and Federal courts appearing on this subject. See *Ex parte* Thornton, 9 Tex. 635; and *Ex Parte* Hagan (Mo.) 245 S. W. 336. In this latter case, it was held that the rendition warrant must show upon its face facts that warranted its sufficiency under the Federal statute and that a warrant, failing to show that the governor of the surrendering state had before him an indictment, or an affidavit made before a magistrate, but which affirmatively declared that the governor did have before him a "complaint warrant," was invalid. In Compton v. Alabama, 214, U. S. 1, 53 L. Ed. 885, it was held that the governor of a State upon whom demand is made for the extradition of a fugitive has no power to issue his warrant of arrest for a crime committed in another State unless he is furnished with a copy of the required indictment or an affidavit made before a magistrate, charging the fugitive with a crime committed in such State. In the case of *Ex parte* Smith, 3 McLean 121, it was held that the executive warrant must bear upon its face the evidence that it was duly issued, and therefore that unless it recites or sets forth the indictment or affidavit upon which it is founded, it is illegal and void. In State, *ex rel*, Stundahl v. Richardson, 24 N. W. 354, it was held that an executive warrant annexed to the return of the sheriff to a writ of habeas corpus, reciting that the fugitive stands charged by "complaint" with the crime therein set forth, is insufficient as a justification of his arrest and surrender, unless a copy of the complaint is also produced,

showing that it has all the essentials of the affidavit required by the statute. Where the affidavit is made before a notary public, and under the law of the demanding state where the original affidavit was made, a notary public is *ex officio* a justice of the peace, and hence vested with magisterial powers, such affidavit will be deemed to have been made before a magistrate. Compton v. Alabama, *supra*. But an affidavit made before a notary public who is not under the law of his state a magistrate, is not such an affidavit as the statute requires. *Ex parte* Owen, 136 Pac. 197.

We are not without authority throwing light on this subject in our own state. In fact, this identical question was decided in the case of *Ex parte* Powell, 20 Fla. 806. In that case, the executive warrant was in almost the identical language of the one now under consideration. In an able opinion by Chief Justice RANDALL, the following conclusions were reached: "1. The act of Congress, February 12, 1793, relating to the rendition of fugitives from justice, requires that a copy of an indictment or an affidavit made before a magistrate, charging the person demanded with having committed a crime in the State from which he fled, shall be produced and authenticated by the Governor demanding the rendition. When an affidavit so procured does not appear to have been made before a magistrate the warrant of arrest should not be issued. 2. When the Governor issues a warrant for such arrest and recites that the demanding Executive produced and authenticated "a copy of affidavits charging" the commission of a crime, not showing that such affidavits were made before a magistrate or judicial officer, it cannot be presumed that the affidavits were made in the course of judicial proceedings for the prosecution of the person demanded, and upon its face the warrant of arrest fails to show that it was authorized by

law.'' See also as bearing on this subject Kurtz v. The State, 22 Fla. 36; State, *ex rel.* Myers v. Allen, 83 Fla. 655, 92 So. 155; People, *ex rel.* v. Draper, 32 N. Y. 245; *Ex parte* Stanley, 8 S. W. 645; 25 C. J. 268.

We notice that it has been contended in some of the cases in the books that on account of the high office held by the chief executive of a State, the validity of his warrant of arrest in extradition cases should not be closely questioned upon hearings before the courts on writs of this kind. No such contention is made in this case. Counsel representing both the State and the defendant concede that this is a government of laws and not of men, and that even an instrument of such dignity as an executive warrant is open to full inquiry as to its legal sufficiency upon the hearing on the ancient writ of *habeas corpus* at the suit of the humblest of individuals. This is a government of laws and not of men. District Judge Pope, in the early case of *Ex parte* Smith, above cited, after referring to the history of the writ, observed, in somewhat florid language of the time: ''Magna Charta established the principles of liberty; *habeas corpus* protected them. It matters not how great or obscure the prisoner, how great or obscure the prison-keeper, this magnificent writ, wielded by an independent judge, reaches all. It penetrates alike the royal towers and the local prisons, from the garret to the secret recesses of the dungeon. All doors fly open at its command, and the shackles fall from the limbs of prisoners of state as readily as from those committed by subordinate officers. The warrant of the King and his Secretary of State could claim no more exemption from that searching inquiry, 'the cause of his caption and detention,' than a warrant granted by a justice of the peace.''

For aught that appears on the face of the warrant now

before us, the affidavit therein referred to may have been made before a commercial notary public, without magisterial powers, and not in the' course of judicial procedure for the prosecution of the person demanded.

It necessarily follows from the principles laid down in the foregoing authorities that the executive warrant which was introduced as authority for holding the alleged fugitive in this case was invalid for the reasons pointed out and that the court below was in error in denying the relator's petition and remanding him to the custody of the sheriff under the warrant. This cause is therefore reversed and remanded to the court below with instructions to enter an order discharging the prisoner.

ELLIS AND STRUM, J. J. concur;

WHITFIELD, P. J. AND TERRELL, J., concur in the Conclusion;

BUFORD, J., disqualified.