HENRY R. CHASE, SHERIFF OF DADE COUNTY, FLORIDA, *Plaintiff in Error*, v. THE STATE OF FLORIDA *ex rel.* H. L. BURCH, *Defendant in Error*.

## Division A.

## Opinion Filed May 2, 1927.

### SYLLABUS.

1. The writ of *habeas corpus* is a writ of right, and is sometimes issued upon very informal application. Motion to quash the writ does not lie because of mere formal defects in the petition upon which it was issued; the inquiry in such cases being not as to the technical formality of the showing made to the Court for the issuance of the writ, but as to the legality of the alleged detention of the prisoner.

2. A petition for the writ of *habeas corpus* alleging that the petitioner was "unlawfully. imprisoned, detained, confined, deprived and restrained of his personal liberty in the county jail, Miami, in the State of Florida, by Henry R. Chase, Sheriff, Dade County, Florida"; held to sufficiently comply with the spirit and meaning of Sec. 3571, Revised General Statutes, as to constitute a sufficient foundation for the issuance of the writ.

3. The requirements as to what the executive of the asylum state must have before him to authorize the issuance of the executive warrant of rendition, and the force and validity of the executive warrant itself, must be tested by the controlling provisions of the Federal Constitution and the Act of Congress adopted in pursuance thereof.

4. Where the executive warrant of rendition is regular and sufficient upon its face and complies with the essential requirements of the Congressional Act, it constitutes *prima facie* evidence of the facts therein set forth and of the authority of the authorized officer to arrest and detain the petitioner in custody for the purpose stated in such warrant.

5. Before the governor of the asylum state is authorized under the Federal Act to issue a warrant of rendition, it must have been made to appear to him: (1) That the person named in such warrant has been demanded as a fugitive from justice by the executive authority of the state or territory from which he fled; (2) that the requisition was accompanied with a copy of an indictment found, or an affidavit made before a magistrate, substantially charging the person demanded with a crime against the laws of the state from whose justice he is alleged to have fled, and (3) that the copy of the indictment or affidavit was duly certified as authentic by the governor or chief magistrate of the state or territory from whence the person so charged has fled.

6. While the law presumes that the chief executive did his duty, and that an executive warrant of rendition, valid and sufficient on its face, was properly issued, the courts have the power, upon *habeas corpus*, to review the action of the governor in determining the jurisdictional prerequisities to the issuance of such warrant, the burden of overcoming the *prima facie* case made by the warrant being upon the accused.

7. The power of the court or judge in *habeas corpus* proceedings brought by one held in custody under an executive warrant of rendition is necessarily limited to the question of whether the prisoner in fact falls within the provisions of the Federal Statute, that is, whether he is subject to extradition, and whether the Federal Constitution and laws have been complied with. Thus the court may ascertain whether the prisoner is the person charged, and if so, whether he is substantially charged with a crime against the laws of the demanding state; whether he is a fugitive from justice, and whether he was bodily in the demanding state at the time the offense was committed.

8. Upon *habeas corpus* proceedings in behalf of one held under an executive warrant of rendition, the courts of this State have no power to determine such person's guilt or innocence of the offense charged against the criminal laws of another state.

9. In *habeas corpus* proceedings in behalf of one held by virtue of an executive warrant of rendition, which recited that the executive authority of the demanding state had produced and filed with the executive authority of this State a copy of indictment found charging the person demanded with having committed in said demanding state a crime against its laws, duly certified as authentic by the executive of the demanding state, it is only necessary to consider whether the indictment shows satisfactorily that the fugitive has been in fact, however inartificially, charged with crime in the state from which he is alleged to have fled.

10. Where upon *habeas corpus* to test the validity of an extradition warrant it was shown that the copy of indictment found in the demanding state, attached to the requisition which the Governor of this State had before him, charged that the accused "voluntarily abandoned" his infant children, whereas the statute of the demanding state used the words "willfully and voluntarily," the omission of the word "willfully" from the indictment will not be deemed material in view of the fact that the word "voluntarily" means practically the same thing, and the indictment therefore shows that the petitioner was "substantially charged" with a crime against the laws of the demanding state.

11. If the Governor of a demanding state, in making requisition upon the Governor of this State, complies with the Federal Act and makes such showing to the Governor of this State as that Act requires, the courts of this State will presume that he acted within his proper powers and will not sit in judgment upon him to inquire whether he had had the applicant for requisition to swear to the application therefor, or had otherwise complied with statutory rules of the demanding state designed to safeguard the proper handling of requisition matters.

12. Where in extradition proceedings the Governor of this State has been furnished by the Governor of the demanding state with a copy of an indictment found substantially charging a crime against the laws of said state and duly certified as authentic, as required by the Federal Act, it is not necessary

for the requisition to go further and show that the prosecutor's name had been endorsed on the back of the indictment, or that the indictment had been signed by the proper prosecuting officer, though these matters may have been required by the statutes of the demanding state.

13. A person charged by indictment or by affidavit before a magistrate with the commission within a state of crime against its laws and who after the date of such crime leaves the state, becomes from the time of such leaving a fugitive from justice within the meaning of the Federal Constitution and laws concerning extradition, no matter for what purpose or with what motive or under what belief he leaves the state and even though at the time of leaving the demanding state he had no belief that he had violated its criminal laws and did not consciously flee from justice in order to avoid prosecution for the crime with which he is charged.

14. Evidence that the charge against one sought in extradition proceedings was made on improper motives and that he was not guilty of the crime charged will not justify his release from custody under a writ of *habeas corpus* where the extradition proceedings are in compliance with the Constitution and laws of the United States.

15. Where upon *habeas corpus* proceedings it appears that the indictment certified as authentic in the requisition of the demanding sate and which was the foundation of the warrant of extradition issued by the Governor of this State, charged the defendant with having committed the crime of abandonment of his minor children on January 1, 1926, in Columbus, Georgia, and it appears by the petitioner's own testimony that he was bodily present in the demanding state at that time, and there being no denial by the petitioner of his identity as the person charged, the discharge of the petitioner from custody is not justified by evidence showing that he came to this State in August, 1925, with the intention of making it his permanent home and that his wife and children had refused his request by letters to join him in this State, and that he had sent them money at various times, and went back to Columbus, Georgia, to visit

them in the latter part of December, 1925, remaining there until early in January, 1926, then returning to this State where he had resided until his arrest under such warrant; as the *prima facie* authority derived from the Governor's warrant is not overcome by evidence that, although the petitioner was within the demanding state at the time laid in the indictment, he was innocent of the charge.

A Writ of Error to the Circuit Court for Dade County; H. F. Atkinson, Judge.

Reversed.

*J. B. Johnson,* Attorney General; *Bart A. Riley,* Acting State Attorney, and *M. H. Rosenhouse,* for Plaintiff in Error;

*R. A. Hendricks,* for Defendant in Error.

BROWN, J.—H. L. Burch, the defendant in error, was arrested by Sheriff Chase, of Dade County, Florida, upon a warrant of extradition issued by the Governor of this State, and upon *habeas corpus* proceedings instituted by him before the Circuit Judge, the defendant in error was discharged. From this judgment of discharge, the sheriff has taken writ of error.

The first question presented is the sufficiency of the petition for the writ, it being contended that the petition did not afford proper grounds for the issuance of the writ. The petition, among other things, alleged that the petitioner was "unlawfully imprisoned, detained, confined, deprived and restrained of his personal liberty in the county jail, Miami, in the State of Florida, by Henry R. Chase, Sheriff, Dade County, Florida."

It is contended that under Section 3571, Revised General Statutes, the application for the writ should show

"proper cause to believe that he is detained in custody
without lawful authority." A reading of this section will
disclose that it does not purport to set out what the applica-
tion shall contain. It provides to whom the application
shall be made and that the petitioner "shall show by affi-
davit or evidence probable cause to believe that he is
detained in custody without lawful authority"; whereupon
it becomes the duty of the court, justice or judge to whom
such application is made to grant the writ. It is well set-
tled in this State that the writ of *habeas corpus* is a writ
of right, and is sometimes issued upon very informal appli-
cation. There is no such practice with us as that of moving
to quash such writ because of formal defects in the petition
upon which it was issued. The inquiry in such cases is not
as to the technical formality of the showing made to the
court for the issuance of the writ, but as to the legality of
the alleged detention of the prisoner. In such inquiry, the
parties are not confined to the matters specifically set forth
in the petition for the writ, but may go outside of these and
inquire into any matter that affects the legality of the
detention. Crooms v. Schad, 51 Fla. 168, 40 So. 497; John-
son v. Lindsey, 89 Fla. 143, 103 So. 419. The petition, how-
ever, in this case complies with the spirit and meaning of
the language of Section 3571, and undoubtedly constituted
a sufficient foundation for the issuance of the writ.

The sheriff's return showed that the petitioner was being
held in custody by virtue of an executive warrant of extra-
dition, issued in due form by the Governor of this State.
The executive warrant set forth *inter alia* that the exec-
utive authority of the State of Georgia had demanded of
the executive authority of this State the delivery and sur-
render of the body of H. L. Burch as a fugitive from jus-
tice from said State of Georgia to said State of Florida, and
had produced and filed with the executive authority of this

State, to which said Burch had fled from the State of Georgia, a copy of indictment found, charging the said person so demanded with having committed in said State of Georgia, against the laws of said State of Georgia, the crime of "abandoment," and which was certified as authority by the executive of the State of Georgia.

The petitioner thereupon filed an answer to said writ, alleging (1) that he was not a fugitive from justice, (2) that he had not committed any offense, and (3) that he had not committed the offense of abandonment.

Upon hearing, the sufficiency of the above answer was attacked by demurrer and motion to strike, which were overruled, and the court permitted the petitioner to file as a part of the record certain sections of the Code of Georgia. One of these, defining the offense of "abandonment of child," showed that the statute, in defining the offense, used the words "willfully and voluntarily." The petitioner also introduced in evidence a certified copy of the request of the Governor of Georgia, the application for requisition, the indictment, and other papers, which were certified to by the Secretary of State for the State of Florida as being a correct copy of the entire record in the application for requisition papers by the Governor of Georgia for the extradition of the petitioner. The indictment charged that "the said H. L. Burch, on the first day of January, in the year 1926, in the county aforesaid, being then and there the father of minor children," naming them, aged eight, twelve, fourteen and fifteen years respectively, "did then and there voluntarily abandon the said minor children, leaving them in a dependent condition."

The petitioner, defendant in error here, contends that by reason of the omission of the word "willfully" from the indictment, it did not charge any offense under the law of Georgia; also that the prosecutrix failed to sign and swear

to the application to the Governor of Georgia for the requisition, as required by the Georgia statute; that the copy of the indictment showed that it was not signed by the Solicitor General, and did not show that it was marked ''bill of indictment'' or ''special presentment,'' and failed to disclose that it was found to be true, or that it was returned and filed with the clerk, and otherwise failed to comply with statutory requirements under the Georgia Code.

These contentions of the defendant in error are either immaterial or untenable. The requirements as to what the executive of the asylum State must have before him to authorize the issuance of the executive warrant, and also the force and the validity of the executive warrant itself, must be tested by the controlling Congressional Act. See Sec. 5278, U. S. Rev. Stats.; Sec. 10126, U. S. Compl. Stats. The executive warrant of rendition in this case is regular and sufficient upon its face, complying with the essential requirements of the Act of Congress, and constitutes, therefore, *prima facie* evidence of the facts therein set forth, and also of the authority of the sheriff to arrest and detain the petitioner in custody for the purpose stated in such warrant. 2 Moore on Extradition, Secs. 621-622; State *ex rel.* Peck v. Chase, 107 So. 541; State *ex rel.* Stringer v. Quigg, 107 So. 409; *Ex parte* Powell, 20 Fla. 806; Munsey v. Clough, 196 U. S. 364, 49 Law Ed. 515; Hyatt v. People, 188 U. S. 691, 47 Law Ed., 657.

Before the Governor of the asylum State is authorized under the Federal act to issue his warrant of rendition, it must have been made to appear to him: (1) That the person named in such warrant has been demanded as a fugitive from justice by the executive authority of the State or Territory from which he fled; (2) that the requisition was accompanied with a copy of an indictment found, or an affidavit made before a magistrate, substantially charging

the person demanded with a crime against the laws of the
State from whose justice he is alleged to have fled, and (3)
that the copy of the indictment or affidavit was duly certi-
fied as authentic by the Governor or Chief Magistrate of
the State or Territory from whence the person so charged
has fled.  See authorities above cited; also Roberts v. Reilly,
116 U. S. 80, 29 Law Ed. 544, 25 C. J. 265, *et seq.*

While the law presumes that the Chief Executive did his
duty, and that an executive warrant of rendition, valid and
sufficient on its face, was properly issued, it is well settled
that in some respects at least the courts have the power,
upon *habeas corpus*, to review the action of the Governor in
determining the jurisdictional prerequisites to the issuance
of his warrant, the burden of overcoming the *prima facie*
case made by the warrant being upon the accused.  25 C. J.
269; Kuney v. The State, 102 So. 547; State *ex rel. Stringer*
v. Quigg, *supra*.  In the latter case it was said:  "The
power of the court or judge in such a proceeding in *habeas
corpus* is necessarily limited, however, to a consideration
of whether the prisoner in fact falls within the provisions
of the Federal statute, that is, whether he is subject to
extradition, and whether the Feleral Constitution and laws
have been complied with.  For example, the court may
ascertain whether the prisoner is the person charged, and
if so, whether he is substantially charged with a crime
against the laws of the demanding State (State v. Allen, 92
Só. 155, 83 Fla. 655) ; whether he is a fugitive from justice,
and whether the warrant shows that he was bodily in the
demanding State at the time the offense was committed
(citing authorities)."  Elsewhere in the opinion of that
case, this Court, speaking through Mr. Justice STRUM, said:
"When the executive warrant of rendition has been issued,
the fugitive is then held solely upon that authority.  His
detention is not for the purpose of trying him in the courts

of this State, for he is charged with no offense against our laws, but he is apprehended and detained for the sole purpose of rendition to the demanding State." And again: "The courts of this State have no power to determine either the innocence or guilt of an offender against the criminal laws of another State;" citing Kurtz v. State, 22 Fla. 36, 45.

It follows that those grounds of the answer of the petitioner to the sheriff's return, setting up that he had not committed any offense of abandonment, were not sufficient in law. The action of the court in overruling the demurrer and motion to strike these grounds was, however, immaterial, as the court grounded its judgment upon the remaining ground of the answer, to the effect that the petitioner was "not a fugitive from justice."

Whether or not the prisoner is a fugitive from justice is a question of fact, which may be inquired into upon *habeas corpus* proceedings, the burden of proof being upon the petitioner. The decision of the Governor on this point is sufficient to justify the arrest and extradition, unless the presumption in its favor is overthrown by contrary proof. Roberts v. Reilly, 116 U. S. 80, 29 Law Ed. 544.

While the question was not directly raised by the answer to the sheriff's return, it was contended upon the hearing in the court below, and is also contended in this court, that the indictment did not sufficiently charge a crime against the laws of Georgia. In the case of State *ex rel.* Myers v. Allen, 83 Fla. 655, 92 So. 155, it was held, in line with the weight of authority, that it is only necessary to consider whether the indictment shows satisfactorily that the fugitive has been in fact, however inartificiarily, charged with crime in the State from which he has fled. See also Munsey, Clough, *supra.*

. Applying this test, the indictment which the Governor

had before him, as shown by the transcript of the record in this case, was sufficient. The omission of the word "willfully" from the indictment can hardly be considered as material in view of the fact that the word "voluntarily," which was used in the indictment, means practically the same thing. The section of the Georgia Penal Code set forth in the record shows that the petitioner was substantially charged with a crime against the laws of that State.

We are not concerned with the statutory rules which the State of Georgia may have adopted regulating the method of obtaining the issuance of requisitions by the Governor of that State. While the Legislature of Georgia may have been well within its rights in making certain regulations not to thwart, but to safeguard the proper handling of such matters, so long as the Governor of Georgia in making requisition upon the Governor of this State complies with the Federal act and makes such showing as that act requires, as above set forth, it will be presumed in this jurisdiction that he acted within his proper powers, and the courts of this jurisdiction will not sit in judgment upon him, to inquire whether he had the applicant for requisition to sign and swear to the application, therefor, or whether the application showed that the requisition was not sought for the purpose of enforcing the collection of a debt, etc. Suffice it to say that the requisition made by the Governor of Georgia on the Governor of this State, as shown by the record, complies with the controlling act of Congress.

It is true that the copy of the indictment as certified to the Governor of this State was not signed by the solicitor general, but the record shows that the solicitor general requested the Governor of Georgia to issue the requisition and furnished him with two certified copies of the indictment. The indictment is certified to by the clerk of the Superior Court of Muskogee County, as having been re-

turned by the grand jury serving at the May term, 1926, as the same appears on file in his office. Even if it were material, we have not been cited to any provision of the Georgia statutes, or decisions, which would indicate that the indictment was void because of the failure of the solicitor general to sign it. It may also be a requirement of the Georgia law, as cited in the briefs, that the prosecutor's name should have been endorsed on the back of the indictment. As to the indictment, the act of Congress only requires that there be certified to the Governor of this State by the Governor of the demanding State, as authentic, a copy of the indictment found. This was done. The clerk's certificate to the copy of the indictment did not purport to set out the endorsements on the back of the indictment, but merely the body of the indictment found. The Federal Act does not require more than this; in fact, it is only required to be certified as authentic in the requisition of the Governor of the demanding State.

We turn now to the only question in the case which impresses us as containing any merit, and that is, the question as to whether or not the petitioner in the court below was a fugitive from justice within the meaning of the Federal Act. If we could decide this case upon the question of the guilt or innocence of the defendant in error, as to the crime of abandonment charged against him, upon the evidence submitted by the petitioner in the court below, we would be inclined to the opinion that he was not guilty of the crime charged. But, as above shown, we cannot consider that issue. As to the contention of the defendant in error that he was not a fugitive from justice, the evidence shows that the defendant came to Florida in August, 1925, and has been continuously in this State ever since, with the exception of a few days in the latter part of December, 1925, and the first part of January, 1926, when he "visited" his family in Columbus, Georgia. He testi-

fied that when he came to Florida, he came with the intention of becoming a permanent citizen and resident of this State, and that by letters and personal interviews he endeavored to induce his wife and children to join him in his home and live with him in the State of Florida, which overtures his wife and children rejected. That he was a working man, and secured a job, and sent his wife and children $400.00 in cash between August 20th and December 20th, 1925, and when he visited them in Columbus, Georgia, on December 20, 1925, he took them an additional $100.00, and after his return, early in January on March 21, 1926, he remitted his family $60.00, and on April 13th, $40.00. That in May, 1926, his wife had him arrested on the charge of abandonment, and on preliminary investigation he was discharged. But while in jail he lost his job at which he had been getting $1.00 per hour, and after his discharge he was unable to get another position and had been without steady work up to the time of the hearing on the *habeas corpus* petition. There was testimony tending to show that the petitioner was a man of good habits. It will be noted that the indictment, which was the foundation of the Governor's warrant, charged the defendant with having committed the crime of abandonment on January 1, 1926. By the petitioner's own testimony, he was bodily present in the State of Georgia at that time, and there is no denial by the petitioner of his identity as the person charged.

The Supreme Court of the United States has held that a person charged by indictment, or by affidavit before a magistrate, with the commission within a State of a crime covered by its laws, and who after the date of commission of such crime leaves the State, becomes, from the time of such leaving, a fugitive from justice within the meaning of the provisions of the federal Constitution and laws concerning extradition, no matter for what purpose,

or with what motive, or under what belief he leaves the State, and even though at the time of leaving the demanding State he had no belief that he had violated its criminal laws and did not consciously flee from justice in order to avoid prosecution for the crime with which he is charged. Appleyard v. Massachusetts, 203 U. S. 222, 51 Law Ed. 161, 7 Anno. Cas. 1073. See also *Ex parte* Williams, 136 Pac. 657, 51 L. R. A. (N. S.) 668; Biddinger v. Commission of Police, 245 U. S. 128, 62 Law Ed. 193. In the last cited case, it was held that the Federal constitutional and statutory provision on this subject was not used to express the law of extradition as usually prevailing among independent nations, but to provide a summary executive proceeding by the use of which the closely associated States of the Union could promptly aid one another in bringing to trial persons accused of crime by preventing their finding in one State an asylum against the processes of justice of another. With such being the origin and purpose of these provisions, they have not been construed narrowly and technically by the courts, as if they were penal laws, but liberally to effect their important purpose. The opinion continues: ''Courts have been free to give this meaning to the Constitution and statutes because, in delivering up an accused person to the authorities of a sister State, they are not sending him for trial to an alien asylum, with laws which our standards might condemn, but are simply returning him to be tried, still under the protection of the Federal Constitution, but in the manner provided by the State against the laws of which it is charged that he has offended.''

Evidence that the charge against one sought in extradition proceedings was made on improper motions, and that he was not guilty of the crime charged, will not justify his release from custody under a writ of *habeas corpus*, where the proceedings are in exact compliance with the Constitu-

tion and laws of the United States. Commonwealth v. Superintendent County Prison, 69 Atl. 916, 21 L. R. A. (N. S.) 939, with note.

In the case of Taft v. Lord (Conn.), 103 Atl. 644, L. R. A. 1918E 545, it was held that one indicted for nonsupport is not subject to rendition from another State where, having a family in the State of the indictment, he removed with his family to another State, where his wife left him and took the children to the place of former residence, after which he failed to furnish support for the family. This holding was justified, as the facts showed that no part of the crime charged was committed in the demanding State and the accused was not bodily present within the demanding State at the time of the alleged nonsupport. This case is in line with the holding in Hyatt v. People, *supra*. It has been held that mere constructive presence within the demanding State is not sufficient; there must have been an actual bodily presence within such State. See Kuney v. State, 102 So. 547, and Hyatt v. The People, *supra,* and note on page 657 of 47 Law Ed., also note in 7 Anno. Cas. 1077. One of the leading cases on this subject is *Ex Parte* State, 73 Ala. 503. This principle is reaffirmed in Strassheim v. Daily, 221 U. S. 280, 55 Law. Ed. 735. In the latter case it was, however, held that one who does, within the demanding State, an overt act which is, and is intended to be, a material step towards accomplishing a crime, and then absents himself from the State, and does the rest elsewhere, becomes a fugitive from justice for extradition purposes when the crime is accomplished, if not before. The Federal Supreme Court went so far as to hold in that case that a showing that the accused was in the State in the neighborhood of the time alleged in the indictment as the date of the crime is sufficient to preclude a discharge on the ground that he was not a fugitive from justice. In the recent case of Hogan v. O'Niel, 255 U. S. 52, 65 Law

Ed. 497, it was held that while the Federal Courts on *habeas corpus* to review interstate extradition proceedings will take notice of the laws of the demanding State, where there is doubt of the sufficiency of the indictment as a pleading, it would not be open to inquiry on *habeas corpus*. It was further held that whether in fact a person whose interstate extradition is demanded, it a fugitive from justice, is for the Governor of the surrendering State to determine, and his conclusion that he is such a fugitive must stand on *habeas corpus* unless clearly overthrown.

In the case of People, *ex rel.* Gottschalk v. Brown, 237 N. Y. 483, 143 N. E. 653, it was held that a divorced husband, indicated in Ohio for nonsupport of his children during a period within which he visited Ohio on two occasions for a few hours, was subject to extradition as a fugitive from justice. It was said in the opinion, ''It may be conceded that this relator entered the State of Ohio for an innocent purpose and that he committed there no overt act in furtherance of the crime with which he is charged, but that charge by its very nature is founded, not upon the commission of overt acts, but upon the neglect of duty. Guilty intent may be presumed from the neglect of duty, and the crime continues as long as the neglect does not cease.   There is no evidence, conclusive or otherwise, that at the very time the relator was in Ohio he was not guilty of failure to provide for his children; in fact he admits that because of disagreement with his wife as to the custody of his children he had discontinued the payment of an allowance for their support. Absence of overt acts is irrelevant when the charge is founded only upon neglect of duty, and the innocence of the purpose with which the relator entered the State cannot affect his guilt while there, if the neglect which forms the basis of the charge continued during that time.   It is not the function of the courts upon the return of a writ of a *habeas corpus* to try

out the actual guilt of the accused. Munsey v. Clough, 196 U. S. 364, 25 Sup. Ct. 282, 49 L. Ed. 515. It is true that in the case of People of Illinois *ex rel.* v. Pease, 207 U. S. 100, 108, 28 Sup. Ct. 58, 60 (52 L. Ed. 121), the court in stating the rules applicable to extradition proceedings did say that a 'person charged with crime against the laws of a State and who flees from justice, *that is, after committing the crime,* leaves the State, * * * may be brought back to the State in which he stands charged with the crime' (Italics are ours), and in other cases the courts have referred to proof of the commission of a crime by the accused as necessary to authorize a warrant of extradition, but these statements must be read in connection with the well-established rule that presence of the accused in the State at the time that the crime was, if ever committed is sufficient proof to justify the arrest and delivery of the accused as a fugitive from justice. After the Governor has upon such proof issued the warrant, the courts have in no case cited held that there is no evidence that the accused is a fugitive from justice or that the *prima facie* authority derived from the warrant issued by the Governor has been overcome by conclusive evidence that, though within the State at that time, the accused was innocent. Whether the courts could so hold in an extraordinary case where the undisputed evidence conclusively shows that, though present in the State, the accused was at such a distance from the place where the crime was committed, or remained within the State so short a time as to render a finding that he took part in the crime contrary to reason, need not be determined by us in this case. Presence in the State of Ohio was not a necessary element of the commission of the crime of nonsupport of children living there, though without such presence extradition may not be demanded. The accused was in Ohio for an appreciable time during the period when it is charged the crime was committed. Dur-

ing the hours he was there he did not support his children, and if he was ever guilty of the crime charged he was guilty at that time. The *prima facie* authority to arrest and deliver the accused based upon the Governor's warrant has not been overcome by the evidence adduced at the hearing, and the writ of *habeas corpus* should have been dismissed.''

It is further contended that the defendant in error had acquired a *bona fide* residence and domicile in this State, and that, as the lawful domicile of the wife and minor children is that of the husband, he could not have been guilty of the offense charged in the demanding State, and that upon the same grounds he could not be a fugitive from justice. Even though the Georgia courts might hold that such considerations would be material upon a trial as bearing upon the question of the guilt or innocence of the accused, it appears to us that for the same reason that constructive presence in the demanding State at the time of the offense is not sufficient to supply actual bodily presence so as to make the accused a fugitive from justice, so constructive presence (if it could be called such in this case) in the asylum State is not sufficient to overcome actual bodily presence in the demanding State at the time the crime is alleged to have been committed, which is sufficient, so far as presence is concerned, to afford a basis for holding a person to be a fugitive. The points thus raised are not material here. And, indeed, if it should be shown upon a trial of the accused in Georgia that he did in fact voluntarily abandon his minor children and leave them in a destitute and dependent condition, the mere fact that he went to another State with the intention to, and did, acquire therein a status as a resident, could hardly be held to constitute a defense upon a trial in the State where the abandonment took place. Nor would a subsequent return to such children, after having so acquired a residence in

another State, and after a few days again abandoning them and leaving them in such dependent condition, and himself returning to the State of his newly acquired residence, necessarily afford a defense to a prosecution for the second abandonment. So the evidence admitted as to the acquirement of a residence or domicile in Florida, and the sending of money to his wife and children, and his efforts to induce them to come and reside with him in this State, where he stood ready to support them, while no doubt tending to show his innocence of the charge made, was not material to the inquiry upon this *habeas corpus* proceeding to test the validity of the extradition, in which the question of guilt or innocence could not be tried.

Applying the reasoning of the foregoing authorities to the present case, whatever may be the merits of the case as to the guilt or innocence of the accused, we are compelled to hold that the judgment of the court below discharging the defendant in error from custody was erroneous.

Reversed.

ELLIS, C. J., AND STRUM, J., concur.

WHITFIELD, P. J., AND TERRELL AND BUFORD, J. J., concur in the opinion.