92 So.2d 172 (1956)
Thomas J. KELLY, as Sheriff of Dade County, Appellant,
v.
The STATE of Florida ex rel. Frank K. LEONARD and R.R. Russell, Appellees.
Thomas J. KELLY, as Sheriff of Dade County, Appellant,
v.
The STATE of Florida ex rel. Earle M. RADAR, Appellee.
Thomas J. KELLY, as Sheriff of Dade County, Appellant,
v.
The STATE of Florida ex rel. R.R. RUSSELL, Appellee.
Thomas J. KELLY, as Sheriff of Dade County, Appellant,
v.
The STATE of Florida ex rel. A.B. CURRY, Appellee.
Supreme Court of Florida. En Banc.
October 10, 1956.
Rehearing Denied February 5, 1957.
*173 Richard W. Ervin, Atty. Gen., Moie J.L. Tendrich, Asst. Atty. Gen., John D. Marsh, County Sol. and A.C. Dressler, Asst. County Sol., Miami, for appellant.
R.K. Bell, Miami, for Frank K. Leonard and R.R. Russell.
Evans, Mershon, Sawyer, Johnston & Simmons, Miami, for Earle M. Rader.
E.F.P. Brigham, Miami, for A.B. Curry.
O'CONNELL, Justice.
These are companion cases. Each was a petition for habeas corpus, the pleadings are identical except for the names of the petitioners, they were filed in the Circuit Court, Dade County, at the same time, one return to the Writs of Habeas Corpus was made applicable to each and the cases were heard together. One order was issued by the circuit court discharging each of the petitioners from custody of the Sheriff, the appellant here, a copy of said order being filed in each of the cases below. The circuit court granted the State the right of appeal from its order and ordered the cases consolidated for purposes of appeal. The appellant, Sheriff of Dade County, appeals from the order discharging the petitioners from custody. The questions in each appeal are identical. All cases will be considered in this one opinion.
The petitioners, appellees here, are four in number. A.B. Curry, was Director of the Dade County Port Authority; Earle M. Rader was County Engineer; R.R. Russell and Frank K. Leonard were officials of Russell House Movers, Inc.
The cases arose from the following facts: The Dade County Port Authority, which administers the Miami International Airport, acquired for expansion purposes a tract of land on which a number of residences and other structures were located. These buildings were sold on bids, however, the purchaser of one residence, which had an attached garage, moved the residence but left the garage on the land of the Authority. The Authority, by written contract, contracted with Russell House Movers, Inc. to move certain warehouses and to remove from the area all temporary structures. The garage in question was ultimately moved by Russell House Movers, Inc. to property in Dade County owned by petitioner Curry.
The County Solicitor, on December 6, 1954, filed an information in the Court of Crimes, Dade County, wherein the four petitioners were charged with Conspiracy to Commit a Felony, to wit: Grand Larceny. The information specified that the goods and chattels involved were a certain one story frame building, i.e. the garage, *174 and three steel I beams, all alleged to be the property of Dade County.
On motion of petitioners, as defendants in the Court of Crimes, for a Bill of Particulars the judge of that court granted the motion and ordered the County Solicitor to file a true copy of the contract between the Authority and Russell House Movers, Inc. and a true copy of a letter written by Rader to Curry dated November 11, 1954, some 18 months after the garage was allegedly stolen, which letter pertained to the obligation of Russell House Movers, Inc. to move said garage from the Authority's land. The information referred to both the contract and the letter above mentioned, but did not incorporate the terms thereof by reference or otherwise. In this order requiring the filing of said contract and letter the judge of the court of crimes said that the contract and letter "* * * be considered as supplementing the Information filed in the above cause."
On December 16, 1954, the information with the contract and letter attached thereto, the four petitions for Writ of Habeas Corpus, the returns to the writs and petitioners' motions for discharge notwithstanding the returns to the writs came on for hearing in the Circuit Court. No testimony was taken, but argument of counsel was had.
In its opinion and judgment the court awarded judgment for the four petitioners and ordered them discharged. These appeals are taken from this order.
The appellant-sheriff raises six questions. However, we feel it necessary to consider only two questions, to wit:
One, whether a bill of particulars to an information is a part thereof so as to be considered by the Court in determining the validity and sufficiency of the information when attacked on habeas corpus.
Two, whether, in habeas corpus proceedings, a court may examine the sufficiency of the evidence to (1) sustain the charges made against a person in an information or (2) to determine the sufficiency of a substantive defense asserted by the accused.
In considering the first question we note that in the order appealed from the trial judge stated: "* * * the contract is a part of the record before the court and can be considered, as I understand it now, as part of the information."
We think this conclusion was incorrect. The information did not incorporate the contract as a part thereof, nor did the order of the court of crimes have the effect of making the contract a part of the information. The contract and the letter, above referred to, were ordered filed as a result of a motion for bill of particulars. We construe the contract to have been a part of the bill of particulars and not a part of the information.
A bill of particulars is not a part of the pleadings and neither strengthens nor weakens an information to which it is attached. In considering the sufficiency of the information it was improper for the circuit court to consider the contract as a part thereof. Middleton v. State, 74 Fla. 234, 76 So. 785 and Kittleson v. State, 152 Fla. 242, 9 So.2d 807.
In arriving at an answer to the second question, as stated above, an examination of the purpose of the writ of habeas corpus reveals that its primary object is to determine the legality of the restraint under which a person is held and is not to determine the sufficiency of the evidence of guilt, or the adequacy of a defense to the crime charged.
This logically means that if one is held under an information which properly and sufficiently alleges facts which constitute a crime, which offense is within the jurisdiction of the court in which the information is filed, the restraint of the person is legal.
*175 The prevailing rule, which is followed by this Court, is that the Court on habeas corpus proceedings will not inquire into the sufficiency of the evidence to support an information or indictment. In Sylvester v. Tindall, 154 Fla. 663, 18 So.2d 892, 894, this Court, citing as authority a number of cases decided previously by it, ruled that:
"The general rule is that the object of the writ of habeas corpus is not to determine whether a person has committed a crime, or the justice or injustice of his detention on the merits, but to determine whether he is legally imprisoned or restrained by his liberty. The use of the writ of habeas corpus to test the sufficiency of the evidence upon which a charge may have been based is not sanctioned by this court; nor is that writ available to review the sufficiency of a substantive defense. State v. Vasquez, 49 Fla. 126, 38 So. 830; White v. Penton, 92 Fla. 837, 110 So. 533; Haas v. Henkel, 216 U.S. 462, 30 S.Ct. 249, 54 L.Ed. 569, 17 Ann.Cas. 1112; Atkinson v. Powledge, 123 Fla. 389, 161 So. 4; State ex rel. Williams v. Coleman, 131 Fla. 872, 180 So. 360; Shelton v. Coleman, 136 Fla. 625, 187 So. 266; Skipper v. Schumacher, 124 Fla. 384, 169 So. 58."
In Lehman v. Sawyer, 106 Fla. 396, 143 So. 310, we stated that the fact that one held under a valid indictment or information has a good and sufficient defense does not entitle him to discharge on habeas corpus. In that case this Court further stated that habeas corpus could not be used as a substitute for a motion to quash an information or for an appeal.
In Sullivan v. State, Fla., 49 So.2d 794, 797, reiterating the principles above expressed this Court stated:
"While we do not wish to state that the writ of habeas corpus can never, under any possible state of facts, be used to examine the evidence upon which a prosecuting officer acted in presenting an Information, we think that great caution should be used in granting the writ solely for that purpose  not only to insure the orderly course of the administration of the criminal law, but also to prevent the use of the writ as a `fishing expedition' to discover the state's evidence."
It is suggested in the cases before us that the charges against the petitioners were "politically" inspired. If such is true it is regrettable and is a violation of the public trust imposed in those officials who brought the charges. Nevertheless, we have held, and properly so, that evidence that the charges against an accused were made on improper motives and that the accused was not guilty of the crime would not justify his release on habeas corpus, if the information under which he was held stated a crime. Chase v. State, 93 Fla. 963, 113 So. 103, 54 A.L.R. 271.
The rule against testing the sufficiency of the evidence on habeas corpus does not apply where a person is held solely under process issuing from a magistrate, for in such a case it is necessary to determine jurisdiction and the existence of probable cause is essential to jurisdiction. Such rulings may not, however, be used as a basis for a court to examine the sufficiency of the evidence for the purpose of determining the guilt of the accused, and upon finding it insufficient to then grant judgment for him. Section 902.14 F.S., F.S.A.; Sullivan v. State, Fla., 49 So.2d 794, 797, supra.
Nor does the rule prevent a court from examining the evidence to determine whether the guilt is evident or presumption great as bearing on the right of an accused to bail where he is charged with a capital offense. State ex rel. Freeman v. Kelly, Fla., 86 So.2d 166; Section 9, Declaration of Rights, Constitution of State of Florida, F.S.A.
In the cases before us the circuit court having first concluded that the contract was *176 a part of the information, next came to the conclusion that "The nub of this whole matter is the question of who owned this property under the contract. I see nothing ambiguous in the contract, and certainly there is no evidence required to determine what the contract means." It came to the conclusion that under the terms of the contract, Russell House Movers, Inc. was required to clear the lands in question of all structures, such as the garage, that the Authority retained no title to the structures and gave no directions to control the disposition of the structures to be removed and that the contract "* * * has the effect of conferring the property in that to the mover." He further concluded that "* * * it [the contract] does have the effect of taking title [to the garage] away from the owner, which in this case would be the County or Port Authority * * *."
The circuit court did not hold that the information itself was insufficient to state a crime. It held that in view of the construction it placed on the terms of the contract, which it had no right to consider, the garage was not the property of the County, but became the property of the mover who was required to move it, and that a removal thereof by the mover could not constitute larceny. The court could not come to this conclusion without considering a document which was not a part of the information. It was error to do so.
At first glance, it may appear to be absurd and without reason to deny petitioners their discharge on habeas corpus, since it might well be, at least under the construction placed on the facts by the learned Circuit Judge, that the petitioners have not committed a crime. Yet by affirming these cases we would establish a precedent which could do great damage to the orderly administration of the criminal law of our State. A great many of those accused of crimes would automatically resort to habeas corpus to test the sufficiency of the evidence on which an indictment or information was based. Prosecutors, acting for the public, would be forced to display their evidence or suffer discharge of the accused. The accused could go on fishing expeditions into the evidence of the State.
This opinion is not to be construed as in any way determining the sufficiency of the evidence. At a trial it may prove to be totally insufficient to support the information. We here merely hold that the sufficiency of the evidence to support the charge in the information cannot be tested by petition for habeas corpus, subject to the exceptions pointed out above.
For the reasons above expressed we conclude that the information was legally sufficient to state a crime and that therefore petitioners were not unlawfully detained.
The judgment and order appealed from is reversed and the petitioners are remanded to the custody of the appellant-sheriff for further proceedings according to law.
DREW, C.J., and THOMAS and THORNAL, JJ., concur.
TERRELL, HOBSON and ROBERTS, JJ., dissent.
TERRELL, Justice (dissenting).
Appellees were informed against for conspiracy to steal an abandoned building of very modest value. After a devious history climaxed with insinuations and questionable charges calculated to destroy faith in the administration of justice, the cause came before the Circuit Court on habeas corpus. On hearing and argument the court found "that under no statement of the facts here could this information be made to state a crime against the relators. Judgment is awarded in favor of the relators in each of these four cases, and it is ordered that they be discharged from custody." This appeal is from the order of discharge.
A majority of the court are reversing the order appealed from because "we would establish a precedent which could do great *177 damage to the orderly administration of the criminal law of our State * * *" and a "great many of those accused of crimes would automatically resort to habeas corpus to test the sufficiency of the evidence on which an indictment or information was based."
I do not agree with any such premise as a basis for denying a man his most precious right, liberty. When a petitioner presents himself to a court of justice armed with a writ of habeas corpus, we are concerned solely with the legality of his detention and his right to freedom. Speculation about what the order we make will do to the "orderly administration of the criminal law" or that we might be flooded with applications for habeas corpus on the part of those charged with crime to test the sufficiency of the evidence against them is beside the question. I do not think such speculations have any place in a case like this.
Habeas corpus in a criminal case is designed for summary relief and unless respondent shows that petitioner is legally held, he is entitled to discharge, not next week or next year. It is, of course, true, as we have many times said, that habeas corpus will not be substituted for appeal or used solely to test the sufficiency of the evidence in a prosecution, but this states only part of the rule. The best rendering of the rule I have found is in Ferris, Extraordinary Legal Remedies, at page 34, the pertinent part being as follows:
"* * * ordinarily, habeas corpus will not lie where there is another adequate remedy, by appeal, writ of error, mandamus, motion or otherwise. But where constitutional rights cannot be otherwise adequately preserved, as where there was no other speedy and efficacious remedy open to petitioner in the usual and orderly course of criminal procedure, and there could be no inquiry whether the charge constituted an offense against a statute until the meeting of a grand jury, and no relief from imprisonment meantime except through the writ of habeas corpus, or by furnishing bail, circumstances are presented which call for summary inquiry and habeas corpus is proper."
Petitioners are, and have been for years, honorable citizens and trusted officers or employees of Dade County Port Authority. Not only their liberty, but their character and their reputation are at stake. I think they come squarely within the rule above quoted. I think the circumstances call for summary relief, their constitutional rights cannot be preserved in any other way. The whole proceeding was carried on in such an unorthodox manner that there is, as the trial court found, "under no statement of the facts here could this information be made to state a crime against the relators." Not only that, no jury acquainted with the facts and circumstances actuating the information would convict them. It is a serious matter to charge one with a conspiracy to steal even when the thing stolen is one of value. It is worse when the charge generates in an environment of spite and counter-charges. The thing alleged to have been stolen was an old derelict of questionable value and the charge was made more than eighteen months after the derelict was discarded and under circumstances that contribute nothing to its good faith or integrity. It is perfectly obvious why the trial court found that from the facts before him that under no statement of the facts "could this information be made to state a crime against the relators." If the trial court with his knowledge of the controversial facts thought there was nothing to it, I will not sit here 500 miles from the scene and knowing less about it and give my consent to smut the character and reputation of relators by subjecting them to additional humiliation.
The purpose of habeas corpus is not to determine guilt or innocence but to determine whether or not one is restrained of his liberty by due process of law. In fine, to determine the legality of the restraint by which petitioner is bound. It may be availed *178 of when one is committed without reasonable or probable cause. It is guaranteed by both State and Federal Constitutions, but the majority of this court proposes to set it at naught because it "would establish a precedent which could do great damage to the orderly administration of criminal law" and lots of others charged with crime would seek its protection. In other words, a majority of this court proposes to substitute a rule of this court governing procedure for a clear mandate of the State and Federal Constitutions to grant one immediate relief when it is shown that he is illegally restrained of his liberty. I agree with the trial court that the charges against petitioners are groundless, that they are entitled to their liberty and should be discharged. I therefore dissent.
HOBSON and ROBERTS, JJ., concur.