GEORGE E. TAFT *vs.* CHARLES E. LORD, DEPUTY SHERIFF.

First Judicial District, Hartford, March Term, 1918.
PRENTICE, C. J., RORABACK, WHEELER, BEACH and SHUMWAY, Js.

To constitute one a fugitive from justice, within the meaning of that expression in the Federal Constitution (Art. 4) and laws of Congress relating to interstate extradition, two things are essential: first, that having been in the demanding State he has left it and is within the jurisdiction of another; and second, that he incurred guilt before he left the former State and while he was bodily present therein.

In the present case a man living in New York with his wife and children, after making financial provision for their temporary support, came to this State to look for a place where he could establish a home, intending to send for them to join him here, which he did about a month later. After a short residence in this State the parents quarreled, and the wife and children returned to New York, while the husband and father continued to live here. Since their return to New York he had not provided in any way for the support, nurture or education of the children, in alleged violation of a statute of that State, for which he was indicted there, and his extradition demanded. *Held* that the conduct of the father prior to leaving the State of New York was in no respect criminal, and that his offense, if any, against the laws of that State, was one which had its conception and consummation while he was bodily present in this State; and therefore that he was not subject to extradition as a fugitive from justice.

Argued March 7th—decided April 30th, 1918.

APPLICATION for a writ of habeas corpus to determine the legality of the arrest and detention of one William Schumann, Jr., under a warrant of extradition issued by the Governor of this State upon the demand of the Governor of New York, made to the *Hon. Edward L. Smith,* judge of the Court of Common Pleas for Hartford County; writ issued and a hearing had as to the sufficiency of the defendant's return; facts found and judgment rendered discharging the said Schumann from custody, and appeal by the defendant. *No error.*

February 8th, 1917, the prisoner, William Schumann, Jr., then a resident of and located in this State, was indicted in the County Court in the County of Kings, State of New York, for the crime of abandonment of children as defined by the statute law of that State. Thereafter extradition proceedings in due form were instituted, and on March 10th, 1917, the Governor of New York requested the Governor of this State to cause Schumann's arrest and his delivery to an agent of the State of New York for return to that State to answer to the indictment. On March 14th, 1917, the Governor of this State honored the request and issued a warrant for the arrest and delivery for return of Schumann as requested. This warrant was placed in the hands of the defendant, a deputy sheriff for Hartford County, for service. Thereupon, in conformity with the directions of the warrant, the defendant arrested Schumann, and was holding him in custody for the purpose of further executing the warrant, when these habeas corpus proceedings were begun. The defendant made return to the writ that in arresting and holding Schumann in custody he was acting in obedience to the authority of the above recited warrant of the Governor of this State, delivered to him for execution.

When the Governor of this State issued his warrant

Taft *v.* Lord.

he had no other evidence or information before him than such as was contained in the requisition of the Governor of New York.

The facts agreed upon and found by the trial judge show the following additional facts: Schumann, from his early boyhood and until his coming to this State in 1916, lived in Brooklyn in New York State. In 1908 he there married his present wife. Subsequent to the marriage the couple lived together and continued to reside in Brooklyn. There the three children were born to them whose abandonment is charged in the indictment. On or about April 17th, 1916, Schumann left his home in Brooklyn and came to Connecticut with the intention of sending for his wife and children to join him in the latter State after he had found a place where he could establish his home there. When he left he gave his wife money for her and his children's maintenance until he could send them more money or bring them to Connecticut. On May 22d, 1916, Schumann sent for his wife and children, and remitted money to defray the expense of their removal to join him in the town of Avon in this State, where he then was. In response, his wife and two of the children came to Avon, and thereafter Schumann and wife lived together in that town until on or about June 2d, 1916. On that day they quarreled, and Mrs. Schumann thereupon returned to Brooklyn, taking her two children with her. She has since continued to live in that city with her children, and Schumann has continued to live in Avon, and was living there when arrested. Since his wife's return to Brooklyn he has failed to make provision in any way for the support, nurture or education of his children.

*Harry G. Anderson* of New York City, with whom was *Hugh M. Alcorn*, State's Attorney, for the appellant (respondent).

*Josiah H. Peck* and *Francis E. Jones,* for the appellee (Schumann).

PRENTICE, C. J. The detention of Schumann by the defendant, attempted to be justified as one step in the performance of a duty imposed upon the executive authority of this State by § 2 of the Fourth Article of the Federal Constitution and statutes enacted in aid thereof, and in the exercise of authority incident thereto, is unlawful if it lies outside the field of that duty, or is in excess of that authority. In such case he is entitled as a matter of right to his enlargement. *Innes* v. *Tobin,* 240 U. S. 127, 131, 36 Sup. Ct. 290; *Ex parte Morgan,* 20 Fed. Rep. 298, 301; *Farrell* v. *Hawley,* 78 Conn. 150, 153, 61 Atl. 502.

The constitutional provision referred to defines and prescribes the limits of interstate extradition or rendition. The duty is imposed upon the several States to cause to be apprehended and delivered up for removal to another State, upon demand of its executive authority, persons charged with crime in the latter State when, and only when, such persons have fled from justice as administered by and under its laws. The flight contemplated by this provision need not be precipitate, or induced by a desire to escape the consequences of crime. But there must be, on the part of the person whose return is sought, a departure from the demanding State under such conditions as to constitute him a fugitive from justice, within the meaning of that term as it is used in this connection. Otherwise his arrest and detention in interstate extradition proceedings is not within the authority and protection of the Federal Constitution and is unlawful.

To constitute one a fugitive from justice, as administered in a given State, two things are essential, to wit: (1) that he, having been in that State, has left

it and is within the jurisdiction of another; and (2) that he incurred guilt before he left the former State and while he was bodily present in that State. *Roberts* v. *Rielly*, 116 U. S. 80, 97, 6 Sup. Ct. 291; *Hyatt* v. *People ex rel. Corkran*, 188 U. S. 691, 713, 23 Sup. Ct. 456; *Jones* v. *Leonard*, 50 Iowa, 106, 108. One who is without the jurisdiction of the State when he is there wanted to answer to a criminal charge does not, by reason of his absence alone, become a fugitive from justice. *Hyatt* v. *People ex rel. Corkran*, 188 U. S. 691, 712, 23 Sup. Ct. 456. Neither does he from the mere fact that he has rendered himself liable to criminal prosecution in that State. *Hyatt* v. *People ex rel. Corkran*, 188 U. S 691, 712, 23 Sup. Ct. 456. The United States Supreme Court, whose pronouncement upon this subject, which concerns the interpretation and meaning of our Federal Constitution and laws, is authoritative, has in a comparatively recent case stated the conditions under which, and under which alone, one becomes subject to interstate rendition as a fugitive from justice, in the following clear and unmistakable language: "We think it plain that the criminal need not do within the State every act necessary to complete the crime. If he does an overt act which is and is intended to be a material step towards accomplishing the crime, and then absents himself from the State and does the rest elsewhere, he becomes a fugitive from justice, when the crime is complete, if not before. . . . For all that is necessary to convert a criminal under the laws of a State into a fugitive from justice is that he should have left the State after having incurred guilt there, . . . and his overt act becomes retrospectively guilty when the contemplated result ensues." *Strassheim* v. *Daily*, 221 U. S. 280, 285, 31 Sup. Ct. 558.

This statement of principle is one which we are bound to accept and apply. No utterance of that court is

more complete, comprehensive or specific. Whereas its former expressions upon the subject had been couched in general terms, as, for instance, that guilt must have been incurred, or the crime charged committed, in the demanding State before his departure therefrom in order to justify a person being regarded as a fugitive from its justice, here is given a particular statement of what that more general language is to be interpreted as meaning. This expository statement makes it clear beyond mistake that no one can be considered a fugitive from justice and extraditable as such who has not either committed some crime in the demanding State, or therein done some overt act which was, and was intended to be, a material step in the accomplishment of a crime subsequently consummated somewhere. Acts wholly innocent in themselves and not intended as a step toward the accomplishment of a crime, are not acts incurring guilt, and cannot be made the basis of a charge that the actor, leaving the State, flees from justice as there administered.

It only remains to apply these principles to the facts in the present case. Examining them as they are spread upon the record, we fail to find any act done by Shumann prior to his departure from New York which, by the wildest flight of the imagination, could be regarded as either criminal in itself or as intended as a step in the accomplishment of a crime subsequently consummated. He resided there, was married there, cohabited with his wife there, and begat children by her there. That is the sum total of his doings in New York until he conceived the purpose of coming to Connecticut. These acts certainly cannot rationally be regarded as having any connection with the crime charged through being material steps taken for its accomplishment.

When we come to his departure, we find that it was

taken, after financial provision for the temporary support of his wife, in search of a place where he could establish a new home for his family, and with a purpose of sending for his family to establish that home if he should succeed in the object of his search, and of sending them further means of support until he could do so. Not only was there nothing criminal in any of this, but the finding at this point completely negatives the existence in Schumann's mind of an intention to accomplish an abandonment of his family.

We have no need to follow further the family history. Schumann has been followed to Connecticut with his skirts clear, and he has never returned to New York. Whatever he has since done or failed to do, his shortcoming has been while his bodily presence was in Connecticut, where he has continuously remained. It is interesting, however, to note that after he had been in this State less than a month he found a place for the establishment of a home; that he then sent for his family and forwarded them the means of defraying the expense of their removal; that they came in response to that request; that thereupon the reunited parties resumed their family relations, which had been temporarily interrupted by the father's quest; and that those relations continued, although for a brief space, until a quarrel arose, when, as its result, the wife, taking her children with her, left her husband behind and returned to Brooklyn, where she and they have since remained. Who was the party at fault in this quarrel we have no means of knowing, and for the purpose of the present proceedings that question possesses no importance. The narrated events, however, are of interest in that they emphasize the conclusion already arrived at, that Schumann did not incur guilt of the offense charged against him prior to his leaving the State of New York, and clearly disclose that his offense

against the laws of that State, if any he has committed, is one which had its conception and consummation while he·was bodily present in this State. It well may be that by his conduct toward his children he has rendered himself answerable to the State of New York for a violation of its criminal laws, but clearly he is not a fit subject for a compulsory return to that State as a fugitive from justice therefrom in order that he may be required to answer to such charge. *Hyatt* v. *People ex rel. Corkran,* 188 U. S. 691, 712, 23 Sup. Ct. 456.

There is no error.

In this opinion the other judges concurred.