E. H. DRUMM, Appellee, v. A. H. PEDERSON, Chief of Detectives et al., Appellants.

No. 42717.

March 5, 1935.

Carl A. Burkman, County Attorney, and Francis J. Kuble, Assistant County Attorney, for appellants.

Owen Cunningham, for appellee.

Donegan, J.—E. H. Drumm and Dorothy Drumm were married in California in July, 1930. Shortly thereafter, they left California and went to the state of Missouri. When they reached a place near St. Charles, Missouri, E. H. Drumm suggested that his wife go to the city of Milwaukee, which was her former home. He furnished her with transportation, gave her a small amount of money, and told her he would follow her to Milwaukee later. At that time Dorothy Drumm was about seven months pregnant and a child, "Virginia Drumm," was born to her during the month of November, 1930. E. H. Drumm sent some small sums of money to his wife for a short time after she had reached Milwaukee, but soon discontinued to contribute anything to her support or the support of his child. About the month of January, 1932, Dorothy Drumm discovered that her husband was living in California. She thereupon instituted proceedings in the city of Milwaukee charging him with nonsupport and abandonment, and he was apprehended in the state of California under a warrant for his extradition. The matter was adjusted at that time, however, and E. H. Drumm was released. In October, 1933, E. H. Drumm returned to the state of Missouri, where he sued for and was granted a decree of divorce from Dorothy Drumm, which provided that he should pay $4 per week for the support of his child, Virginia Drumm. The payments of $4 per week were made for a time but were soon discontinued. Thereafter, in January, 1934, Dorothy Drumm, having learned of her husband's presence in the city of Des Moines, Iowa, caused him to be indicted in the court of Milwaukee, Wisconsin, for non-

support of his child, Virginia Drumm. A requisition for his extradition was issued by the Governor of Wisconsin to the Governor of the state of Iowa. This requisition was honored by the Governor of the state of Iowa, and E. H. Drumm was taken into custody by the defendants, under a warrant directing that he be arrested and delivered to an officer to be transported to the state of Wisconsin. He thereupon instituted this action for a writ of habeas corpus. The writ issued and the cause was tried in the municipal court of the city of Des Moines on the 28th day of February, 1934. The trial court found that E. H. Drumm was illegally and unlawfully detained and that the writ of habeas corpus should be sustained and entered judgment accordingly. From this judgment, the defendants, who are the officers having the plaintiff in their custody, appeal.

Several questions have been argued in the presentation of this appeal, but, in the view we take of the case, the judgment of the trial court must be sustained, unless that court was in error in holding that E. H. Drumm was not a fugitive from justice. We are here dealing with the legality of the appellee's detention under a warrant issued for his extradition. The legality of such detention must depend therefore upon the constitutional provisions and laws in reference to extradition.

Section 2, article 4, of the Constitution of the United States provides that:

"* * * A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime. * * *"

Section 13501 of the Code of 1931 provides that:

"No executive warrant for the arrest and surrender of a person demanded by the executive authority of another state or territory, as a fugitive from the justice of such state or territory * * * shall be issued, unless the requisition from the executive authority of such other state or territory, * * * *is accompanied by sworn evidence that the party charged is a fugitive from justice,* * * *." (Italics are ours.)

It seems to be well settled that the Governor's determination as to the sufficiency of the sworn evidence that the party charged

is a fugitive from justice is not conclusive, but may be the subject of judicial inquiry. Jones and Atkinson v. Leonard, 50 Iowa 106, 32 Am. Rep. 116; Seely v. Beardsley, 194 Iowa 863, 190 N. W. 498; 29 C. J. 76; Illinois ex rel. McNichols v. Pease, 207 U. S. 100, 28 S. Ct. 58, 52 L. Ed. 121; In re Cook (C. C. E. D. Wis.) 49 F. 833; Hyatt v. New York, 188 U. S. 691, 23 S. Ct. 456, 47 L. Ed. 657.

 In the instant case the evidence is undisputed that the accused was never physically in the state of Wisconsin since long prior to the commission of the offense for which it is sought to extradite him. It is contended by the appellants, however, that by sending his wife, who was then pregnant, into the state of Wisconsin, the omission of the accused to afterwards furnish support for his child was an offense for which he could be prosecuted in the state of Wisconsin; that the crime having been committed through his agency, the abandoned child, in the state of Wisconsin, this constituted a constructive presence of the prisoner at the place of the commission of the crime and is sufficient to make him a fugitive from the justice of Wisconsin within the provisions of the Constitution of the United States and statutory provisions governing extradition. This question seems to have been settled by this court in the case of Jones and Atkinson v. Leonard, 50 Iowa 106, 32 Am. Rep. 116, in which it was sought to extradite the accused to the state of Massachusetts for the commission of the crime of false pretense. After their arrest, the accused, as plaintiffs, sued out a writ of habeas corpus, and on hearing in the trial court they were discharged. In sustaining the lower court, this court said:

"Conceding, however that the determination of the Governor is conclusive as to the sufficiency of the affidavit, we have for determination the question whether the plaintiffs are in fact fugitives from justice.

"Bouvier defines such a person to be 'one who, having committed a crime in one jurisdiction, goes into another in order to evade the law and avoid punishment' (1 Bouvier's Law Dictionary, 551); and the Constitution of the United States defines such person to be one 'who shall flee from justice'.

"It is difficult to see how one can flee who stands still. That there must be an actual fleeing we think is clearly recognized by the Constitution of the United States. The words 'who shall flee' do not include a person who never was in the country from which he is said to have fled.

"It is urged, however, that the plaintiffs were constructively in Massachusetts at the time the crime is alleged to have been committed, and that they have constructively fled therefrom.

"In the People v. Adams, 3 Denio [N. Y] 190 [45 Am. Dec. 468], it was held that a person actually a resident of Ohio could commit a crime in New York, and upon his coming voluntarily into the last named State he could be there tried and convicted. We are not required to either approve or disapprove the doctrine laid down in this case, and it will be presumed the laws of Massachusetts are the same as those of New York in this respect. In the cited case the defendant went voluntarily into the State of New York, and it might with much propriety be said that, having so done, he was amenable to the laws thereof.

"The question in the case at bar is very different. Granting that a crime may be thus committed, the question before us is whether, then, the State of Iowa is bound to surrender a citizen to the State in which the crime was committed? This depends upon the obligation in this respect imposed by the Constitution of the United States. Before it can be said there is such an obligation, two things must appear. There must be—*First,* a crime charged; and, *second,* that the person charged is a fugitive from justice; that is to say 'that he has fled from the State in which he is charged with the crime to escape punishment'. Such must be the legal effect of his fleeing. In other words, he must have been in the State, committed the crime, and fled."

The rule announced in the above case was reannounced by this court in the case of Seely v. Beardsley, 194 Iowa 863, 190 N. W. 498, 500, wherein we said:

"What constitutes a fugitive from justice? Two things are essential, to wit: (1) That the accused having been in the demanding state at the time charged has left it and is within the jurisdiction of another and declines to return voluntarily; and (2) that he incurred guilt before he left the former state, and while he was bodily present in that state. Taylor v. Wise, 172 Iowa 1, 126 N. W. 1126; Taft v. Lord, 92 Conn. 539, 103 A. 644, L. R. A. 1918E, 545."

In Hyatt v. New York, 188 U. S. 691, 23 S. Ct. 456, 47 L. Ed. 657, which was an appeal from the Court of Appeals of the state of New York, the Supreme Court of the United States, speak-

·ing through Mr. Justice Peckham, and referring to the necessity of a showing that the person sought to be extradited must be a fugitive from justice, said:

"Thus, the person who is sought must be one who has fled from the demanding state, and he must have fled (not necessarily directly) to the state where he is found. It is difficult to see how a person can be said to have fled from the state in which he is charged to have committed some act amounting to a crime against that state, when in fact he was not within the state at the time the act is said to have been committed. How can a person flee from a place that he was not in? He could avoid a place that he had not been in; he could omit to go to it; but how can it be said with accuracy that he has fled from a place in which he had not been present? This is neither a narrow, nor, as we think, an incorrect, interpretation of the statute. It has been in existence since 1793, and we have found no case decided by this court wherein it has been held that the statute covered a case where the party was not in the state at the time when the act is alleged to have been committed. We think the plain meaning of the act requires such presence, and that it was not intended to include, as a fugitive from the justice of a state, one who had not been in the state at the time when, if ever, the offense was committed, and who had not, therefore, in fact, fled therefrom."

See, also, Kuney v. State, 88 Fla. 354, 102 So. 547; Taft v. Lord, 92 Conn. 539, 103 A. 644, L. R. A. 1918E, 545; Ex parte Kuhns, 36 Nev. 487, 137 P. 83, 50 L. R. A. (N. S.) 507; In re Roberson, 38 Nev. 326, 149 Pac. 182, L. R. A. 1915E, 691.

Appellants contend that a different rule prevails in cases where the accused is charged with a crime of omission, and that in such cases the accused may be a fugitive from the justice of the demanding state without having been in such state at the time of the crime of omission with which he is charged. We have examined all of the many cases cited by the appellants and we do not feel that any one of these cases supports their contention. The only one of the cases thus cited which deals in any way whatever with the status of an accused as a fugitive from justice in an extradition proceeding is the case of State of South Carolina v. Bailey, 289 U. S. 412, 53 S. Ct. 667, 77 L. Ed. 1292. In that case, a requisition for extradition issued from the Governor of South Carolina to the

Governor of North Carolina. On hearing on a writ of habeas corpus sued out by, the accused, the court of North Carolina released him. On appeal to the Supreme Court of the United States it was held that the evidence, as to whether the accused was in the state of South Carolina at the time of the commission of the crime, was in conflict, and that he should not have been released. The presence of the accused involved in that case was his actual, physical presence, and not a constructive presence, as in this case. In the case at bar, however, there can be no question that the accused was not physically present in the state of Wisconsin at any time since long prior to the commission of the crime with which he is charged. Many · of the other cases cited by the appellants deal merely with the legality of a prosecution of a person charged with desertion, where he was not in the state in which the desertion is alleged to have occurred at the time it occurred, but came there subsequently. These cases go only to establish that there are crimes which may be committed by one through an agency without his bodily presence in the state or at the place of the commission of the crime, and that if his presence is afterward secured in the state where the crime is alleged to have been committed, he can be prosecuted there. As said in Hyatt v. New York, supra:

"The exercise of jurisdiction by a state to make an act committed outside its borders a crime against the state is one thing, but to assert that the party committing such act comes under the Federal statute, and is to be delivered up as a fugitive from justice of that state, is quite a different proposition."

In no case cited by appellants, and in no case which we have been able to find, has an accused been held to be a fugitive from justice in an extradition proceeding where it clearly appeared in the evidence that he was not bodily in the demanding state at the time of the commission of the crime.

In the case at bar, we reach our decision reluctantly, because the facts of this case are such that we cannot escape the conclusion that the plaintiff has been guilty of most reprehensible conduct in his failure to support his child. We are, however, under the undisputed facts of the case, compelled to hold that he was not a fugitive from the justice of the state of Wisconsin. All the authority which we have been able to find, without a single exception, is to the effect that, in order to be a fugitive from justice from a state

in which an accused is alleged to have committed a crime, he must have been in that state bodily at the time of the commission of the crime. Not being a fugitive from justice, the plaintiff could not be held legally under the warrant for his extradition, and the trial court did not err in sustaining the writ of habeas corpus and discharging him from custody.

The judgment of the trial court is, therefore, affirmed.

ANDERSON, C. J., and ALBERT, MITCHELL, KINTZINGER, POWERS, PARSONS, RICHARDS, and HAMILTON, JJ., concur.